UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ X

MILAN SEKERAK,                        :     Case No.: _____
                                      :
            Plaintiff,                :     **COMPLAINT**
                                      :
      -against-                       :     **DEMAND FOR JURY TRIAL**
                                      :
CENTRAL EUROPEAN MEDIA                :
ENTERPRISES LTD., JOHN K. BILLOCK,    :
ALFRED W. LANGER, PARM SANDHU,        :
KELLI TURNER, PETER KNAG, and TREY    :
TURNER,                               :
                                      :
            Defendants.               :

------------------------------------ X

Plaintiff, Milan Sekerak ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This is an action brought by Plaintiff against Central European Media Enterprises Ltd. ("CME" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with CME, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Merger") between CME and PPF Group N.V. ("PPF Group").

2.      On October 27, 2019, CME entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which the Company's shareholders will receive $4.58 in exchange for each share of CME common stock they own (the "Merger Consideration").

3.      On January 10, 2020, in order to convince CME shareholders to vote in favor of the Proposed Merger, Defendants authorized the filing of a materially incomplete and misleading definitive proxy statement (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for CME; and (ii) the valuation analyses performed by CME's financial advisor, Allen & Company LLC ("Allen & Company"), in support of its fairness opinion.

5.      The special meeting of CME shareholders to vote on the Proposed Merger is currently scheduled for February 27, 2020 (the "Shareholder Vote").  It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the Shareholder Vote so Plaintiff can cast an informed vote and properly exercise his corporate suffrage rights.

6.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Merger until the material information discussed herein is disclosed to CME's shareholders sufficiently in advance of the Shareholder Vote or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8.      Personal jurisdiction exists over each Defendant either because the Defendant

conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman* 764 F.2d 1309, 1305 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* At 1316

9.      Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, CME's common stock trades on Nasdaq stock exchange, which is headquartered in this District, CME hired Allen & Company as a financial advisor, Covington & Burling LLP as a legal advisor, and Georgeson LLC as a proxy solicitor for the purposes of the Proposed Merger, all of which are also located in this District rendering venue in this District appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

10.      Plaintiff is, and at all relevant times has been, a holder of CME common stock.

11.      Defendant CME is a media and entertainment company operating in five Central and Eastern European markets with an aggregate population of approximately 45 million people. The Company's common stock trades on the Nasdaq stock exchange under the ticker symbol "CETV".

12.      Individual Defendant John K. Billock is, and has been at all relevant times, a

director of CME.

13.     Individual Defendant Alfred W. Langer is, and has been at all relevant times, a director of CME.

14.     Individual Defendant Parm Sandhu is, and has been at all relevant times, a director of CME.

15.     Individual Defendant Kelli Turner is, and has been at all relevant times, a director of CME.

16.     Individual Defendant Peter Knag is, and has been at all relevant times, a director of CME.

17.     Individual Defendant Trey Turner is, and has been at all relevant times, a director of CME.

18.     The Individual Defendants referred to in ¶¶ 12-17 are collectively referred to herein as the "Individual Defendants" and/or the "Board", and together with CME they are referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### I.     Background and the Proposed Merger

19.      CME is a media and entertainment company operating in Central and Eastern Europe. The Company's assets are held through a series of Dutch and Curacao holding companies. The Company manages its business on a geographical basis, with six segments: Bulgaria, Croatia, the Czech Republic, Romania, the Slovak Republic and Slovenia.

20.     PPF Group operates as an investment management firm investing in banking and financial services, telecommunications, biotechnology, real estate, retail, insurance, and agriculture markets. PPF Group serves customers worldwide.

21.     On October 27, 2019, CME issued a press release announcing the Proposed Merger,

which states in relevant part:

### CENTRAL EUROPEAN MEDIA ENTERPRISES TO BE ACQUIRED BY PPF

*Transaction Valued at Approximately US$ 2.1 Billion*
*US$ 4.58 Per Class A Common Share in Cash*
*32% Premium to Unaffected Share Price*

Hamilton, Bermuda - October 27, 2019 - Central European Media Enterprises Ltd. ("CME" or the "Company") (NASDAQ/Prague Stock Exchange: CETV) today announced that it has entered into a definitive agreement to be acquired by an affiliate of PPF Group N.V. ("PPF Group") in a cash transaction valued at approximately US$ 2.1 billion.

Under the terms of the agreement, holders of all of CME's issued and outstanding Class A common shares will receive US$ 4.58 per share. This valuation represents a premium of approximately 32% to CME's share price prior to the announcement on March 25, 2019 that the Company was commencing a process to explore and evaluate potential strategic alternatives.

John Billock, Chairman of the CME Board of Directors, said, "The Special Committee of the Board, together with our advisors, conducted an extensive review of alternatives, which involved outreach to and engagement with a significant number of strategic and financial parties. This announcement today reaffirms our commitment to deliver value to all shareholders."

In a joint statement, Michael Del Nin and Christoph Mainusch, Co-Chief Executive Officers, said, "Over the course of the last six years, while transforming the business and delivering a continuous stretch of astonishing profitability growth, our primary focus has been on creating value for our owners. This transaction, which is the culmination of those efforts, is the right one for our shareholders and a satisfying conclusion to one of the most successful turnarounds of a leading media company in recent times. We are pleased that the PPF Group, with a strong track record as operators of businesses across many industries, shares our perspective on the importance of local content and its ability to attract large audiences to television."

The agreement has been approved unanimously by CME's Board of Directors, upon the recommendation of the Special Committee of the Board. CME's largest shareholder, AT&T Inc., has agreed to vote in favor of the transaction. The acquisition is expected to be completed around the middle of 2020, subject to the receipt of regulatory approvals and the satisfaction of customary closing conditions. The consummation of the transaction is not subject to any financing contingencies.

The Company is being advised by Allen & Company LLC and Bank of America Merrill Lynch as its financial advisors, and Covington & Burling LLP as its legal advisor.

22.     The Merger Consideration represents inadequate compensation for CME shares. Indeed, CME has outperformed expectations and announced positive financial results in consecutive quarters leading up to the Proposed Merger. Given the Company's strong recent financial performance and bright economic outlook, it is imperative that shareholders receive the material information (discussed in detail below) that Defendants have omitted from the Proxy, which is necessary for shareholders to properly exercise their corporate suffrage rights and cast an informed vote on the Proposed Merger.

## II.     The Proxy Omits Material Information

23.     On January 10, 2020, Defendants filed the materially incomplete and misleading Proxy with the SEC.  The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision in connection with the Proposed Merger.

The Misleadingly Incomplete Financial Projections

24.     First, the Proxy omits critical financial projections, including the net income projections for CME as prepared by CME management (the "Net Income Projections"). Defendants elected to summarize multiple sets of financial projections, but they excised and failed to disclose the Net Income Projections. By disclosing certain projections in the Proxy and withholding the Net Income Projections, Defendants render the tables of projections on pages 49-50 of the Proxy materially incomplete and provide a misleading valuation picture of CME.  Simply

put, net income projections are irreplaceable when it comes to fully, fairly, and properly understanding a company's projections and value.

25.     Unlike poker where a player must conceal his unexposed cards, the object of a proxy statement is to put all one's cards on the table face-up. In this case only some of the cards were exposed—the others were concealed. If a proxy statement discloses financial projections and valuation information, such projections must be complete and accurate.  The question here is not the duty to speak, but liability for not having spoken enough.  With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. Accordingly, Defendants have disclosed some of the projections relied upon by Allen & Company and the Board but have omitted the Net Income Projections. This omission renders the summary of the projection's tables and the Company's financial picture in the Proxy misleadingly incomplete.

The Misleadingly Incomplete Summary of Allen & Company's Fairness Opinion

26.     Second, the Proxy describes Allen & Company's fairness opinion and the various valuation analyses performed in support of their opinion.  Defendants concede the materiality of this information in citing Allen & Company's fairness opinion and their valuation analyses among the "material" factors the Board considered in making its recommendation to CME shareholders. Proxy at 36; *see also* Proxy at 43 ("The summary of the financial analyses described in this section entitled "Financial Analysis" is a summary of the material financial analyses provided by Allen & Company in connection with its written opinion, dated October 27, 2019, to the Special Committee and the Board of Directors."). However, the summary of Allen & Company's fairness opinion and analyses provided in the Proxy fails to include key inputs and assumptions underlying the analyses. Without this information, as described below, CME shareholders are unable to fully understand

these analyses and, thus, are unable to determine what weight, if any, to place on Allen & Company's fairness opinion in determining how to vote on the Proposed Merger. *See* Proxy at 43 ("Considering the data set forth in the tables below without considering the full narrative description of the financial analyses, including the methodologies and assumptions underlying the analyses, could create a misleading or incomplete view of the financial analyses performed by Allen & Company."). This omitted information, if disclosed, would significantly alter the total mix of information available to CME's shareholders.

27.     In summarizing the *Discounted Cash Flow Analysis* prepared by Allen & Company, the Proxy fails to disclose the following key information used in the analyses: (i) the inputs and assumptions underlying the 8.25% to 9.25% discount rate range (including the values of the company-specific WACC/CAPM components); and (ii) the actual terminal values calculated for each analysis.

28.     These key inputs are material to CME shareholders, and their omission renders the summary of the *Discounted Cash Flow Analysis* incomplete and misleading. As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…" Id.  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.  This dazzling variability makes it difficult

> to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

Id. at 1577-78.

29.     Without the above-omitted information CME shareholders are misled as to the reasonableness or reliability of Allen & Company's analysis, and unable to properly assess the fairness of the Proposed Merger. As such, these material omissions render the summary of the *Discounted Cash Flow Analysis* included in the Proxy misleadingly incomplete.

30.     Next, in summarizing Allen & Company's *Selected Public Companies Analysis* and *Selected Precedent Transactions Analysis*, the Proxy fails to disclose the individual multiple of each company or transaction utilized in the analyses. A fair summary of a comparable companies or transactions analysis requires the disclosure of the individual multiple for each company or transaction used in the analysis. Merely providing the range of the multiples that a banker calculated without any further information is insufficient, as shareholders are unable to assess whether the banker applied appropriate multiples, or, instead, applied unreasonably low multiples in order to present the Merger Consideration in the most favorable light. Accordingly, the omission of this material information renders the summary of this analyses provided in the Proxy misleading.

31.     In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the forthcoming Shareholder Vote, Plaintiff will be unable to cast an informed vote regarding the Proposed Merger, and is thus threatened with

irreparable harm, warranting the injunctive relief sought herein.

## COUNT I
### Against All Defendants for Violations of Section 14(a) of the Exchange Act

32.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

33.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

34.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

35.     The omission of information from a proxy will violate Section 14(a) if other SEC regulations specifically require disclosure of the omitted information.

36.     Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Merger.  Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) financial projections for CME; and (ii) the valuation analyses performed by Allen & Company in support of its fairness opinion.

37.     In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

38.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger; indeed, the Proxy states that Allen & Company reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided by Allen & Company, as well as their fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the financial projections and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to, separately, review Allen & Company's analyses in connection with their receipt of the fairness opinion, question Allen & Company as to their derivation of fairness, and be particularly attentive to the procedures

followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

39.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

40.     CME is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

41.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote on the Proposed Merger if such misrepresentations and omissions are not corrected prior to the special meeting of CME's shareholders.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II
## Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     The Individual Defendants acted as controlling persons of CME within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as

officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger.  They were thus directly involved in preparing this document.

46.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the special meeting of CME shareholders to vote on the Proposed Merger or consummating the Proposed Merger, until the Company discloses the material information discussed above which has been omitted from the Proxy;

B.     Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.     Granting such other and further relief as this Court may deem just and proper.

//

//

//

//

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


Dated: January 17, 2020          **MONTEVERDE & ASSOCIATES PC**

                                    */s/ Juan E. Monteverde*

Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*